NO. 8002.                          STATE OF LOUISIANA

MARTIN GRADNEY                     COURT OF APPEAL

        VS

N. O. RAILWAY & LIGHT CO, ET AL      PARISH OF ORLEANS.

Court of Appeal,
PARISH OF ORLEANS

Stansbury

# OPINION.

BY his Honor John St. Paul.

Plaintiff alleges that being a passenger on a Tchoupitoulas car, and being required to transfer, he alighted and made his way to a point on the neutral ground at Canal and Tchoupitoulas Streets, where he intended to board a Dauphine car, and which was the proper place to do so. That when a Dauphine car finally appeared, and just before it reached the point where petitioner and others were standing, a Canal Belt car crossed over in front of said Dauphine car in order to get on the same track as said Dauphine car. That in switching over to said track in front of said Dauphine car, said Canal Belt car traversed the neutral ground between the two tracks, causing plaintiff and the other passengers to recede out of reach thereof. That the fender of said car, owing to size and construction and the narrow space between the tracks at that point, overlapped the track in making the curve; to such an extent as to leave insufficient room for a person to stand in safety when the adjoining track was occupied by a car coming from the opposite direction. That while plaintiff was attempting to get out of reach of the fender of said Canal Belt car, a Dauphine car approached him on said adjoining track without signal or other warning of its approach, and struck plaintiff in the back throwing him to the ground; whereby he was injured, etc.

496

For answer defendant denies generally the allegations of the petition; denies any fault or negligence on its part; and avers that plaintiff backed into the track on which the Dauphine car was approaching, at a time when said car was so close to him that he should have known that it was dangerous to do so; and hence the fault was exclusively that of plaintiff.

## I.

A police officer, who saw the accident but refused to make a statement at the time, tetstifies that he saw the Dauphine car, coming pretty lively, but it stopped. That he then heard the motorman release the airbrakes; that he saw him going over the interseution, and the overhead switch blew off as he did so. That the motorman "got up and turned round, and stood up in a little step, laughing and loking with his conductor; the car rolling on at a lively rate of speed." That he saw plaintiff standing in a curve as the car shot over the curve and hit plaintiff. That plaintiff was not on the track but between the tracks, on the neutral ground. That the motorman threw on the overhead switch, and put on the power without looking ahead; and did not look ahead again from thepoint where the switch blew out until just before he struck plaintiff, about 50 or 70 feet. That when he did look forward it was too late; and the car stopped with the middle about where plaintiff fell. That plaintiff

497

had a companion standing about a foot from him, to whom he was talking. Plaintiff was not hit by the fender of the car, but witness cannot say whether he was hit by the vestibule post or by the side of the car. The conductor with whom the motorman was chatting was at the rear of the car. That witness was once a motorman in the employ of defendant and left it on good terms. That once he quit because he knew he was going to be discharged for an accident due to his own fault; and once he was discharged for striking a conductor who had delayed his dinner, and for refusing to make report about it.

This witness did not give his testimony in open court; but as the judgment below was for defendant, it is clear that the trial judge (who did hear the other witnesses) did believe him.

Mr. Krumbhar, an architect, took measurements at the scene of the accident. At the place pointed out to him as the spot where plaintiff fell, there is six feet seven inches between the tracks; when two cars make the curve at the same time, one car overlaps two feet six inches and the other just two feet, leaving exactly two feet one inch clear; sufficient, but just sufficient, for a person to stand in safety if he stand quite still.

Officer Borges did not see the accident; he saw the plaintiff only when he was already down. "The car was

498

about to stop where the plaintiff was lying."

Sam Scott, plaintiffs companion, did not see him struck; he was standing about a car's length from plaintiff, further from the river and looking the other way. There were six or seven persons standing where they were.

Plaintiff testifies that he was waiting for his car to arrive; that there was a Canal Belt car which was in the lead on a parallel track, and when the latter "went to come out ahead of her x x we had to step back; and when she swung around the curve, the fender swung ##### so far over that I had to step back to keep from getting hit. X X X (There were) any quantity of women, children and men, about forty or fifty, standing on the little space of ground. x x x (I was standing) between the two tracks. x x x When the fender made me back, I don't know what happened, x x x the other car struck me in the left side and laid ### me out (unconscious). x x (My hearing) is not so very good. I cant hear so very good." He was nearest the river of all those who stood there.

The motorman testifies that when he approached the spot where the accident happened, "there was nothing near the track at all.x x x(Plaintiff) was standing up there looking between two cars for his car; and when I reached about three feet from him, he made about three steps back and was struck by the vestibule post of my car. x x x

I was ringing the bell, but it seemed like he did not hear it. x x x I immediately stopped the car, and he was lying down. x x (My car) was going very slow, it was three points. on X X (There were) two or three other persons standing there, about fifteen feet from him; he was further from (further off than they?)

## II.

It may be admitted that the conditions testified to by Mr. Krumbhar, show that the place at which plaintiff sought to board his car is suggestive of a danger to which a carrier ought not voluntarily submit a passenger; but on the other hand the place is not the private property of defendant or under its exclusive control; but it is on a public street over which the municipal authorities have the sole power to regulate streetcar traffic. Act 159 of 1912, Section 8, paragraph 12; Constitution Art. 48.

Hence the authorities cited by plaintiff have no special application to the case at bar; and it suffices that defendant shpuld operate its cars at that point with a degree of care commensurate with the increased hazard due to such a situation.

Moreover the situation seems by no means so very perilous as plaintiff suggests. For it is shown that a number of people could and did stand there in safety; that the one point of danger is at least a full car length beyond the point at which plaintiff's companion was standing

to take the same car as himself. And plaintiff's suggestion that the place was so crowded as to force him to that one dangerous spot, is not borne out by the testimony of his companion, and seems to conflict with that of the two police officers who did, and therefore could, see him lying on the ground.

### III.

As it is an undisputed fact that plaintiff backed into the car, the question therefore is simply this; was the motorman keeping a proper lookout? Did he sound his bell? Did he do all he could to stop his car when he saw plaintiff backing into it?

As to this we have only the testimony of the first police officer and of the motorman; who flatly contradict each other. And the trial judge who heard the motorman believed him.

We cannot say that the trial judge erred; for the motorman's testimony that plaintiff seemed not to hear the bell finds corroboration in the fact that plaintiff's hearing is not good; and the promptness with which he stopped his car shows that he was attending to his duties.

The judgment appealed from seems to us correct, and accordingly;

Judgment Affirmed.

New Orleans La, May 2nd, 1921.